IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : CRIM. NO. 09-137-1 |
| v. | : |
| | : CIV. NO. 12-1956 |
| ALFREDERICK JONES | : |

**SURRICK, J.**                                                                                                                               **APRIL  8 , 2014**

### MEMORANDUM

Presently before the Court is Petitioner Alfrederick Jones's pro se[1] Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Crim No. 09-137-1, ECF No. 69). For the following reasons, Petitioner's Motion will be denied.

**I.   BACKGROUND**

During the fall of 2007, Petitioner engaged in two drug transactions with a confidential informant ("CI") who was working with agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Pennsylvania Attorney General's Bureau of Narcotics Investigation ("BNI"). On October 24, 2007, Petitioner sold nine ounces of cocaine to the CI for $6,100. On November 2, 2007, Petitioner sold another nine ounces of cocaine to the CI for $9,100. The October 24th transaction was recorded. The November 2nd transaction was monitored live by surveillance agents.

On September 24, 2009, Petitioner was found guilty by a jury of two counts of distribution of a mixture or substance with a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C § 841(b)(1)(C). (Judgment 1, ECF No. 57.) On January 6,

---

[1] Pro se pleadings are held to less stringent standards. *Estelle v. Gamble,* 429 U.S. 97, 107 (1976).

2010, Petitioner was sentenced to concurrent terms of 262 months in prison and four years of supervised release, based on the Court's application of the career offender provision of Section 4B1.1 of the United States Sentencing Guidelines ("U.S.S.G."). (Judgment 2-3.) The Third Circuit affirmed Petitioner's conviction and sentence on November 7, 2011. (USCA Judgment, ECF No. 68; *United States v. Jones,* 450 F. App'x 183 (3d Cir. 2011).)

On April 13, 2012, Petitioner timely filed this Motion, pursuant to 28 U.S.C. § 2255. (Pet'r's Mot., ECF No. 69.) On the same day, Petitioner filed a Motion Requesting Permission to Amend his Section 2255 Motion, to add an additional claim. (Mot. Am., ECF No. 70.) The Government filed its response on May 30, 2012. (Gov't's Resp., ECF No. 73.) Petitioner filed a reply to the Government's response on June 27, 2012. (Pet'r's Reply, ECF No. 76.)

## II.     LEGAL STANDARD

A federal prisoner may request that the sentencing court vacate, set aside, or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The purpose of this provision is to "protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Calhoun,* Nos. 05-363-6, 10-986, 2012 U.S. Dist. LEXIS 90110, at *21-22 (E.D. Pa. June 28, 2012) (quoting *United States v. DeLuca,* 889 F.2d 503, 506 (3d Cir. 1989)).

The court may decide that an evidentiary hearing is necessary to explore issues raised by a Section 2255 motion. *United States v. Booth,* 432 F.3d 542, 545-46 (3d Cir. 2005). Such a

hearing is unnecessary where the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

### III. DISCUSSION

Petitioner raises eight grounds for relief. Seven of Petitioner's claims allege that trial counsel, Arnold C. Joseph, Esquire, was ineffective, thereby depriving Petitioner of his constitutional right to assistance of counsel. The grounds are as follows:

1. Petitioner claims that counsel was ineffective for not informing him of his constitutional right to testify. (Pet'r's Mot. 3.)

2. Petitioner claims that counsel failed to convey a pair of plea offers to him that were proposed by the Government. (*Id.* at 4.)

3. Petitioner argues that counsel failed to inform the Court of a juror who was sleeping through the proceedings. (*Id.* at 7.)

4. Petitioner asserts that counsel was ineffective in failing to produce a defense transcript of the Government's recordings from October 24, 2007. (*Id.* at 9.)

5. Petitioner claims that counsel failed to object to inappropriate prosecutorial vouching for the credibility of a witness during closing argument. (*Id.* at 12.)

6. Petitioner contends that, prior to trial, counsel misidentified the potential sentence that Petitioner faced. (*Id.* at 17.)

7. Petitioner argues that the Government's misrepresentation of his career offender status subjected him to an unjust sentence. (Pet'r's Reply 1.)

        8.        Petitioner argues that his appellate counsel was ineffective for failing to raise this Court's alleged misapplication of the career offender enhancement on appeal. (Pet'r's Mot. 15)

**A.    Ineffective Assistance of Trial Counsel**

    *1.    Legal Standard*

The Sixth Amendment guarantees a defendant in a criminal case the right to the effective assistance of counsel. To show that counsel was ineffective, a petitioner must show that his or her attorney's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Missouri v. Frye,* 132 S. Ct. 1399, 1405 (2012). A deficient performance is one where counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn,* 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688). To show prejudice, a petitioner must demonstrate that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687.

Court review of trial counsel's performance is "'highly deferential' and 'indulge[s] a strong presumption' that, under the circumstances, counsel's challenged actions 'might be considered sound . . . strategy.'" *Buehl*, 166 F.3d at 169 (quoting *Strickland*, 466 U.S. at 689). "To avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable." *Gov't of the Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1435 (3d Cir. 1996) (quoting *United States v. McGill*, 11 F.3d 223, 227 (1st Cir. 1993)). With this latitude, it is "only the rare claim of ineffectiveness of counsel that should succeed under the

properly deferential standard to be applied in scrutinizing counsel's performance." *Buehl*, 166 F.3d at 169 (quoting *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)).

        2.      *Ground One:  Right to Testify*

Petitioner claims that trial counsel failed to notify him of his constitutional right to testify. (Pet'r's Mot. 3.)  Petitioner claims that if he had known of this right, he would have testified to rebut the allegedly false testimony of Government witness James Hawkins. (*Id*. at 3-4.) Petitioner argues that because of his having been unaware of this right, the outcome of his trial was prejudiced. (*Id.* at 4.)  Petitioner has spent his entire life in the criminal justice system.  He had four adjudications as a juvenile for very serious offenses, including robbery and burglary.  He was tried and convicted of drug distribution and of aggravated assault, two separate trials as an adult, and he entered pleas of guilty to separate charges of robbery and possession of a firearm as a convicted felon.  He has spent much of his adult life in jail.  Petitioner's assertion that he had never been advised by any attorney or any judge that he had a constitutional right to testify at trial is not credible.  We reject the claim that this veteran of the criminal justice system did not know that he had a right to testify.

Furthermore, Petitioner provides no evidence to support findings of deficient performance of counsel or prejudice.  Petitioner's claim is conclusory and lacks support from the record.  In examining the alleged deficient performance of trial counsel, we must use a "highly deferential" lens. *Strickland*, 466 U.S. at 689.  Even if we were to assume, for the sake of argument, that counsel's performance was deficient here, Petitioner has failed to demonstrate that he suffered prejudice as a result of such performance.  The *Strickland* standard is clear.  A petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Id.* at 694. Courts evaluating such claims are obligated to consider the totality of the evidence in determining the depth of the alleged prejudicial effect. *Id.* at 695-96. Petitioner does not specifically state how he would have rebutted Hawkins's testimony, or how that testimony would overcome the tape recorded evidence of the drug transaction and the surveillance evidence presented by the Government. Considering the overwhelming evidence of Petitioner's guilt, we fail to see how the outcome of this trial would have been different had he testified. Moreover, if he had testified at trial, the jury would have learned of his criminal background.

Petitioner offers nothing but his own statement that counsel failed to advise him of his right to testify. Even if Petitioner could demonstrate counsel's failure, however, he would be unable to show that prejudice resulted. Accordingly, Petitioner's first claim is denied.

       3.     *Ground Two: Plea Offers*

Petitioner asserts that trial counsel failed to convey two distinct, written plea offers for ten-year sentences to resolve both the firearm and narcotics charges against him. (Pet'r's Mot. 4.) Had these plea offers been shared, Petitioner argues that he would have accepted one of them. (*Id.* at 5.) As evidence for the existence of the plea offers, Petitioner explains that appellate counsel told unnamed members of Petitioner's family that two plea offers from the Government were in his case files, unsigned. (*Id.* at 4.) As evidence of prejudicial effect, Petitioner notes that he admitted his guilt at sentencing and thus would have accepted a ten-year sentence offer in lieu of the 327 months that he received. (*Id*. at 5.)

The problem here is that the allegations set forth in Petitioner's Motion lack both specificity and evidentiary support. Petitioner has not provided the documents he claims are in

his case file, nor a statement from counsel, or any supporting declarations from family members who he claims had knowledge of the alleged plea offers. This is probably because there were no such plea offers. The Assistant United States Attorney who handled Petitioner's case has filed an affidavit with the Court and a Supplemental response to Petitioner's Motion, stating unequivocally that no plea offers were made to Petitioner. Petitioner's claim is without merit.

        4.      *Ground Three: Juror Misconduct*

Petitioner claims that a juror slept through most of the witness testimony at trial. (Pet'r's Mot. 8.) Petitioner alleges that this behavior rose to the level of juror misconduct, that he informed counsel of this, and that counsel dismissed Petitioner's concerns without raising them before the Court. (*Id.*) Petitioner objects to counsel's failure to bring the juror's alleged misconduct to the attention of the Court, arguing that it deprived him of a fair trial. (*Id.*)

There is no evidence in the record to support Petitioner's allegation. Moreover, this Court did not observe any juror sleeping during the course of the trial, and the Court was observing the jurors continuously during the entire trial. In addition, neither the Government attorney nor trial counsel raised any concerns about a juror sleeping during the trial. Petitioner's assertion is only that, Petitioner's assertion. Like his statement regarding the alleged plea agreement, Petitioner's claim is without merit.

        5.      *Ground Four: Defense Transcripts*

Petitioner alleges that trial counsel was ineffective for failing to produce a defense transcript of the Government's recording of the October 24, 2007 drug transaction. (Pet'r's Mot. 9.) Pointing to a sidebar conference where trial counsel shared his dismay at learning that Hawkins had assisted in correcting the Government's transcripts "five or six times," Petitioner

argues that trial counsel had a duty to either arrive at a stipulated transcript of the recording or to produce a defense version for the jury to consider.  (*Id*. at 11.)  Petitioner reasons that this prejudiced him and changed the outcome of the trial.  (*Id*. at 12.)

Petitioner does not understand the nature of trial counsel's objection to the transcript.  Pointing to transcripts of a pre-trial hearing and the trial, Petitioner implies that there was a dispute over the accuracy of the transcript.  (*Id*. at 9-10.)  Petitioner quotes trial counsel as saying that "[h]e never gave me—he never told me that this was a rough draft, and now I am hearing for the first time today that this was a rough draft, and now it's been changed to a 'final' transcript."  (July 9, 2009 Hr'g Tr. 25, ECF No. 36.)  When read in context, this quotation simply indicates that counsel wanted to read the "final" transcript and ensure that Agent Motzenbecker used that transcript while she testified about grand jury testimony that had taken place months before the final edits.  (*Id.* at 25-28.)  The court recessed to allow counsel time to review the "final" edition of the transcript.  (*Id.* at 26.)  When the court returned, counsel renewed and clarified his concern, stating "Your Honor, I just want to make the record clear.  I'm not objecting to her testifying.  I'm objecting to her testifying using the April 22nd transcript—rather the May 22nd transcript."  (*Id.* at 28-29.)

Petitioner's claim is meritless.  Petitioner does not point to material issues that undermine the accuracy of the transcript and that a defense version or stipulated transcript would remedy.  Furthermore, while Petitioner claims that trial counsel was ineffective, counsel objected to the use of the transcript; that his objection was overruled reflects the Court's disposition of that objection and not the sufficiency of his performance.  Petitioner's counsel performed properly.

Petitioner also cites trial testimony by Hawkins regarding his correction of transcripts as

8

evidence of "grave issues surrounding the authenticity of the recording." (Pet'r's Mot. 10.) This exchange too is taken out of context. Trial counsel inquired at sidebar as to the progression of edits that led to the "final" transcript, wondering aloud whether Hawkins had sat with the Agent on one occasion to edit as originally understood on multiple occasions. (Sept. 21, 2009 Trial Tr. 44, ECF No. 62.) Petitioner incorrectly attributes trial counsel's concern to the accuracy of the transcript, when, in fact, the record clearly reflects that counsel's concern was with a perceived discrepancy between Mr. Hawkins's and Agent Motzenbecker's testimony.

The record demonstrates that trial counsel's performance was proper, and that Petitioner suffered no prejudice. Accordingly, Petitioner's claim is denied.

      6.      *Ground Five: Improper Vouching*

Petitioner argues that trial counsel was ineffective in failing to object to an instance of improper vouching by the prosecutor during the closing argument. (Pet'r's Mot. 12.) Petitioner believes that inappropriate vouching for the credibility of Hawkins's testimony obligated trial counsel to seek a curative remedy. (*Id*. at 14.) Petitioner further argues that the evidence against him at trial was not overwhelming, and that Hawkins's testimony proved to be a critical component of the Government's case. (*Id*.) Petitioner contends that the inappropriate vouching and lack of counsel's objection significantly altered the outcome of the case. (*Id*.)

Vouching is "an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." *United States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998). It is well-settled that prosecutors "may not vouch for the credibility of a witness based on the prosecutor's personal knowledge, experience, or opinions." *United States v. Lee*, 612 F.3d 170, 194 (3d Cir. 2010). To

establish that vouching has occurred, a petitioner must show that (1) the prosecutor assured the jury that the testimony of the Government witness is credible; and (2) this assurance was based on either the prosecutor's personal knowledge, or other information not contained in the record. *Walker*, 155 F.3d at 187. The Third Circuit does not accept vouching as grounds to grant a new trial per se. *Id.* at 184-85. Instead, comments by a prosecutor are "analyzed on a case by case basis." *Id.* (citing *United States v. Zehrbach*, 47 F.3d 1252, 1267 (3d Cir. 1995). Even when vouching is determined to have occurred, a new trial is not always warranted, depending on the effect that vouching had on the judgment. *See Lee*, 612 F.3d at 195 (stating that a new trial "is not warranted because it is highly probable that the error did not contribute to Lee's conviction").

Petitioner refers to two portions of the prosecutor's closing argument as evidence of vouching for the credibility of Mr. Hawkins's testimony:

> But ask yourself, what motive would Mr. Hawkins have, other than to tell the truth here in Court today? Why would he come into Court and lie against Alfrederick Jones? What evidence is there to show that he would have any reason to lie about Alfrederick Jones? The Government submits that the evidence shows that he has every reason to tell the truth about Alfrederick Jones, and that what he told the—Investigator Motzenbecker was true and correct, because he was able to purchase on two separate occasions 9 ounces of cocaine on each occasion from defendant Alfrederick Jones.
>
> . . . .
>
> More corroboration then what Mr. Hawkins was telling you from the witness stand. That he was telling you the truth, that defendant is guilty of the crimes that he's charged in this indictment.

(Sept. 23, 2009 Trial Tr. 103-04, 112, ECF No. 64; Pet'r's Mot. 12-13.)

In the first portion of the prosecutor's closing statement recited above, the prosecutor referred only to evidence presented at trial, and never discussed outside knowledge or information.  Government counsel was not vouching for the witness.

The second recited excerpt cited by Petitioner does not constitute improper vouching. The purpose of this statement was clear in context:  to establish, based on evidence and testimony in the record, that Hawkins was a credible witness because his statements could be corroborated.  Petitioner's selected excerpt is preceded by the prosecutor's call for jurors to examine "the audio, the video, the surveillance . . . all the different pieces of corroboration to show to you, so you can find that Mr. Hawkins was truthful when [he] testified before you in this case." (Sept. 23 Trial Tr. 112.)  The purpose of this statement was to place Hawkins's testimony within the evidentiary framework; the prosecutor offered no improper, extrinsic bolstering of Hawkins's credibility.

Defense counsel acted appropriately in not objecting since there was no improper vouching by the prosecutor.  Had counsel raised such an objection, he would not have prevailed. Furthermore, even if the Court had included a limiting jury instruction, there is no reason to suspect that the outcome of the trial would have been different.  The Government's case against Petitioner was based on overwhelming evidence.  Any instruction to disregard alleged prosecutorial vouching would not have affected the outcome of this trial.  Again, Petitioner's claim lacks merit.

       7.     *Ground Six:  Minimum and Maximum Sentences*

Petitioner claims that trial counsel misrepresented his sentencing exposure, blinding him to the realities of a potential sentence inclusive of the career offender enhancement.  (Pet'r's Mot.

17.) Petitioner asserts that counsel consistently told him that he faced a Guideline range of 77 to 96 months in prison if convicted. (*Id*.) The impact of this alleged deficiency was to deprive him of the information necessary to determine whether to take the Government's plea offers or to stand trial, with Petitioner claiming that he would have accepted a plea offer. (*Id*. at 17-19.)

Again, all that we have regarding Petitioner's Sentencing Guideline range and his sentencing exposure is Petitioner's own statement that if he knew that he faced career offender status he would have accepted the plea offer. The problem with this is that there were no plea offers. Petitioner's claim is without merit.

        8.     *Ground Seven: Career Offender Assessment*

Petitioner contends, in his motion to amend, that he received Government documents disputing that two of his prior sentences had run consecutively. (Mot. Am. 1.) Petitioner argues that these two convictions were therefore related for sentencing purposes, thus entitling him to an exemption from the career offender enhancement. (*Id.*) The failure to regard these two convictions as a single predicate, Petitioner argues, has resulted in an unjust sentence. (*Id.* at 1-2.)

According to the Sentencing Guidelines:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or controlled substance offense; (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The term "crime of violence" is defined to "include[] murder, manslaughter, kidnaping, aggravated assault, forcible sex offenses, [and] robbery . . . ." U.S.S.G. § 4B1.2(a) app. n. 1.

> The Guidelines clarify the method for counting prior convictions:
>
> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest, . . . if there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.

U.S.S.G. § 4A1.2(a)(2).

The burden for asserting that two prior offenses should be counted as one rests with the Petitioner. *Johnson v. United States*, No. 06-4475, 2007 U.S. Dist. LEXIS 50021, at *20 (D.N.J. July 10, 2007). Petitioner fails to establish that his prior robbery and aggravated assault charges are "related" for purposes of sentencing. The PSR clearly notes that Petitioner was sentenced on the robbery charge on June 2, 1986 and the aggravated assault charge on January 31, 1990. (PSR 8-9.) The PSR also reflects that Petitioner was arrested for the robbery in 1985 and was arrested for the aggravated assault in 1988. Given the three-and-a-half year period separating these two crimes, and the lack of any indication that these crimes were charged together or in any way connected to one another, there is no basis upon which to conclude that these convictions should be considered together. Furthermore, Petitioner's December 6, 1988 manufacturing/possession conviction qualifies as a "controlled substance offense," further exposing him to the career offender enhancement. *See* U.S.S.G. 4B1.1(a)(3).[2]

Petitioner's career offender enhancement was properly assessed. Accordingly, Petitioner's claim is meritless and will be denied.

---

[2] Petitioner also attempts to re-litigate his robbery charge both at trial and in his Section 2255 motion, alleging that victim impact testimony at sentencing indicated that the robbery was not a violent crime. (Pet'r's Mot. 15-16.) However, U.S.S.G. § 4B1.2(a) is clear on this point, specifically citing robbery in the application notes. U.S.S.G. § 4B1.2 app. n1.

### B. Ineffective Assistance of Appellate Counsel

#### 1. Ground Eight: Career Offender Enhancement on Appeal

Petitioner claims that appellate counsel failed to raise the allegedly erroneous application of the career offender enhancement on appeal. (Mot. 15.) Petitioner reasons that appellate counsel's failure to raise the issue on appeal rises to the level of ineffective assistance of counsel because it affected the outcome of his appeal. (*Id.* at 17.)

We have already determined that this claim lacks merit. *See supra*, III.A.8. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).[3] Accordingly, counsel's performance was not deficient.

### C. Certificate of Appealability

Finally, the Government requests an order that no certificate of appealability issue. (Gov't's Resp. 31.) The Third Circuit's Local Appellate Rules instruct:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge will state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report.

---

[3] The record is clear that appellate counsel did not feel that the career offender enhancement was a viable issue on appeal. In his February 2011 letter to Petitioner, appellate counsel wrote that "[a]fter reviewing the cases, identifying potential legal issues and reviewing the applicable rules and law, I have reached the conclusion there are no appellate issues relating to sentencing . . . ." (Mot. Ex. A.) Petitioner's only evidence that this decision violates his constitutional right to assistance of counsel is a "constructive" theory of categorizing past criminal offenses. (Mot. 15-17.) It is instructive that the sentencing court and appellate counsel in reviewing the case found this argument unpersuasive. (Jan. 6, 2010 Sent. Tr. 49, ECF No. 66; Pet'r's Mot. Ex. A.)

Third Circuit L.A.R. 22.2. Under 28 U.S.C. § 2253, a petitioner seeking a certificate of appealability must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As discussed, Petitioner has raised no viable claims, and we are satisfied that no reasonable jurist would disagree. Therefore, a certificate of appealability will not issue.

**IV.    CONCLUSION**

For the foregoing reasons, Petitioner's Motion will be denied. There is no basis upon which to hold an evidentiary hearing or to issue a certificate of appealability.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**
